UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA,

                                                    16-CR-403 (GRB)

            -vs-

ALEXI SAENZ,

                Defendant.
----------------------------------------------------X


**REPLY IN SUPPORT OF OMNIBUS MOTION TO DISMISS AND MOTION TO
DISMISS COUNTS FOUR, SIX, TWENTY, TWENTY-SEVEN, TWENTY-NINE,
THIRTY-TWO, THIRTY-FOUR, AND THIRTY-SEVEN**

## I.    INTRODUCTION

Alexi Saenz has filed two motions to dismiss various counts in the Eighth Superseding

Indictment: an omnibus motion to dismiss various counts due to multiplicity, lack of specificity,

unconstitutionality, and/or failure to state an offense (Doc. 2548) ("Omnibus Motion") and an

additional motion to dismiss the 18 U.S.C. § 1959(a)(1) counts pursuant to *Miller v. Alabama*,

567 U.S. 460 (2012) (Doc. 2558) ("*Miller* Motion"). In its omnibus Response (Doc. 2620)

("Response") to Mr. Saenz's two motions to dismiss,[1] the government misconstrues (or

mischaracterizes) a number of Mr. Saenz's arguments, attempts without adequate support to

delay the resolution of various issues until sentencing, and consistently relies on inapposite

authority. The government also needlessly addresses arguments that Mr. Saenz raised for

purposes of preservation, improperly characterizing counsel's advocacy as "frivolous" even

though at least one of Mr. Saenz's "preservation arguments" is the same argument that the

---

[1] The Response also addresses arguments raised by codefendant Jairo Saenz in separate
motions.

1

United States Supreme Court recently deemed worthy of consideration in another case. The government's arguments should be rejected and Mr. Saenz's Omnibus Motion and *Miller* Motion should be granted.

## II.   DISCUSSION

### A.   The Racketeering Counts (Counts One and Two)

Mr. Saenz has moved to dismiss Count One of the Indictment, which charges him and his codefendants with violating the substantive racketeering provision of 18 U.S.C. § 1962(c), on the grounds that it is facially insufficient due to its failure to state an offense and its lack of specificity. Omnibus Motion at 4-15. He has also moved to dismiss Count Two, which charges the same defendants with racketeering conspiracy under 18 U.S.C. § 1962(d), for essentially the same reasons. *Id.* at 15-17.

The government first takes issue with Mr. Saenz's challenge to the insufficiently specific racketeering acts set out in Count One. Those acts allege violent conduct against certain victims identified only with "John Doe" monikers, as well as against some generalized groups of victims referred to only as "rival gang members." It appears to be the government's position that its post-Indictment disclosure of certain additional information regarding the charges is enough to salvage its allegations against Mr. Saenz. While it is true that a "minimally sufficient" indictment—one that "provide[s] even minimal protection against double jeopardy"—need not be dismissed where the movant has enough information about the charges to avoid prejudice, *see United States v. Stringer*, 730 F.3d 120, 124-25 (2d Cir. 2013), Count One does not satisfy even this low bar. Unlike the indictment in *Stringer*, the Indictment in this case does not provide the "substantial limiting detail" necessary to avoid a double jeopardy problem and is therefore invalid on its face. *See id.* at 124. For this reason, Mr. Saenz—unlike the defendant in *Stringer*—

2

need not show that he has been prejudiced by the Indictment's deficiencies in order to prevail. The government's claim that the lack of specificity in the Indictment is cured by its recent provision of a bill of particulars (in response to an order by Magistrate Judge Locke) identifying some of these victims is consequently unavailing; even if any prejudice to Mr. Saenz is alleviated by this disclosure, the Indictment itself is still invalid. *See generally id.* And regardless of whether or not it is true that it "is a well-accepted practice in this Circuit" to identify victims using "John Doe" monikers or as "rival gang members," *see* Response at 19-20, it does not follow that an indictment devoid of adequate limiting detail is constitutionally sufficient merely because it uses those terms.

The government next takes issue with Mr. Saenz's observation that the enterprise and the pattern of racketeering activity charged in Count One need to be distinct for that count to be valid. The government's argument that *proof* of these two elements need not be distinct, Response at 20, misapprehends Mr. Saenz's concern.[2] Mr. Saenz is not taking issue with the government's evidence (nor could he, in a motion to dismiss) but is instead seeking to hold the government to its burden of providing him with "an indictment that states the essential elements of the charge against him." *See* Omnibus Motion at 9 (quoting *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000). Certainly, the government could use overlapping evidence to prove the two distinct elements at trial, *if* those two elements were properly and separately charged. Here,

---

[2] In any event, the government's argument overlooks the Supreme Court's clear dictate that different kinds of evidence are needed to prove these two elements: an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," while a pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Even though "the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other." *Id.*

they are not. *United States v. Mazzei*, the case on which the government relies, did not address RICO's pleading requirements, which are what is at issue here. 700 F.2d 85 (2d Cir. 1983). Those pleading requirements obligate the government to allege a pattern of racketeering activity that is sufficiently separate from the alleged enterprise. *See Pirro*, 212 F.3d at 91. The government has not done so. *See* Omnibus Motion at 9.

The government is also incorrect in its contention that the Indictment has sufficiently alleged the enterprise's structure and Mr. Saenz's role in it. "[C]ommon or shared purpose," "continuity of structure and personnel," and "ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering" are the core elements of a RICO enterprise. *United States v. Porcelli*, 865 F.2d 1352, 1363 (2d Cir. 1989) (citation omitted); *see also Boyle v. United States*, 556 U.S. 938, 948-49 (2009) (government must plead that the enterprise "function[ed] as a continuing unit and remain[ed] in existence long enough to pursue a course of conduct"). Merely "set[ting] forth several of [Mr. Saenz's] acts" is *not* all that is necessary to plead Mr. Saenz's participation in the enterprise. *Cf.* Response at 21. These acts need to have actually amounted to "conduct[ing] or participat[ing] . . . in the conduct of [the] enterprise's affairs," and beyond its conclusory allegations, the government has not satisfied this pleading requirement. *See* 18 U.S.C. § 1962(c). In seeking to distinguish *United States v. Viola*, 35 F.3d 37 (2d Cir. 1994), which holds that "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise . . . is insufficient to bring a defendant within the scope of" the RICO statute, the government appears to allude to its evidence of and/or its position about Mr. Saenz's purported leadership role in the enterprise. *See* Response at 22 n.8. But whatever the government may believe about Mr. Saenz's role in the MS-13, it is not alleged in the Indictment. This warrants dismissal of Count One.

4

Finally, the government's arguments notwithstanding, Count Two is insufficiently specific and fails to allege an offense for the same reasons that Count One is insufficiently specific and fails to allege an offense. *See Williams v. Affinion Group, LLC*, 889 F.3d 116, 126 (2d Cir. 2018) (RICO conspiracy claim fails when the "alleged conspiracy involve[s] an agreement to commit the same substantive RICO violations [that have been] insufficiently pled"). The government does not dispute that deficiencies in a substantive RICO count carry over into the sufficiency of a corresponding RICO conspiracy count, as is the case here. Instead, the government merely rests on its arguments that Count One, the substantive racketeering count, is sufficient—which, as set forth above, is not the case.

**B.    The VICAR Counts (Counts Three through Six, Nine through Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Nineteen, Twenty, Twenty-Six through Twenty-Nine, Thirty-One through Thirty-Four, Thirty-Six, Thirty-Seven, and Forty)**

### 1.    VICAR Multiplicity

Mr. Saenz has challenged certain of the 18 U.S.C. § 1959 charges brought against him as multiplicitous with one another, a pleading deficiency that creates an "exaggerated impression of [Mr. Saenz's] criminal activity by" charging him multiple times for the same offense. Omnibus Motion at 21-29 (quoting *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009)). The government largely rests its opposition on the contention that Mr. Saenz's multiplicity challenges are premature. It is true that in circumstances where "two statutory sections operate independently of one another, 'there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes,'" and "'the Double Jeopardy Clause imposes no prohibition to simultaneous prosecutions.'" *United States v. Josephsberg*, 459 F.3d 350, 355 (2d Cir. 2006) (quoting *Ball v. United States*, 470 U.S. 856, 860 (1985)). But those circumstances are not present here. *Josephsberg* involved a defendant's multiplicity challenge to his simultaneous

charging under two different statutes—28 U.S.C. § 2701 (income tax evasion) and 26 U.S.C.

§ 7212(a) (obstruction)—whereas the multiplicitous counts at issue here are all charged under a

single statutory provision, 18 U.S.C. § 1959. The same is true of other cases cited by the

government: *United States v. Ghavami*, for example, clarified that no double-jeopardy issue is

present pre-trial in situations "where an indictment alleges more than one conspiracy *in violation*

*of different statutory provisions*." No. 10-1217, 2012 WL 2878126, at \*10 (S.D.N.Y. July 13,

2012) (emphasis added).

This distinction explains why, even post-*Josephsberg*, courts in the Second Circuit have

continued to dismiss multiplicitous counts in advance of trial under circumstances like these.

*See, e.g.*, *United States v. Barnaby*, No. 18-cr-33, 2021 WL 2895648 (E.D.N.Y. July 8, 2021);

*United States v. Cain*, No. 05-CR-360, 2007 WL 9655699, at \*8 (W.D.N.Y. May 9, 2007),

*report and recommendation adopted*, No. 05-CR-360A, 2007 WL 3015223 (W.D.N.Y. Oct. 12,

2007). In *Barnaby*—which post-dates *Josephsberg*—the court recognized that "[t]he decision of

whether to dismiss multiplicitous counts prior to trial 'is a matter for trial court discretion, and is

most appropriate when the mere making of the charges would prejudice the defendant with the

jury,'" and that "'[i]f an indictment is multiplicitous on its face, then the multiplicitous counts

should be dismissed pre-trial.'" 2021 WL 2895648, at \*7 (quoting *United States v. Reed*, 639

F.2d 896, 905 n.6 (2d Cir. 1981); *United States v. Miller*, 26 F. Supp. 2d 415, 422 (N.D.N.Y.

1998)).

Moreover, while *Josephsberg* addressed the applicability of the double jeopardy clause to

simultaneous prosecution (as opposed to punishment) on the same offense, the *Josephsberg* court

did not address the prejudice that arises from the exaggeration of a defendant's criminality at the

charging stage. *See Polizzi*, 257 F.R.D. at 36. Indeed, the Second Circuit has long held the

concern—which was not disrupted by *Josephsberg*—that "[t]he vice in multiplicity of charges is that it may . . . improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *Reed*, 639 F.2d at 904. This prejudice is present in advance of trial.

Turning to the multiplicitous counts themselves, the government contends that the VICAR attempted murder counts (Counts Ten and Thirteen) and the VICAR assault counts (Counts Eleven and Fourteen) create no double-jeopardy problem because they are "legally and factually distinct" from one another, and reiterates its position that resolution of this issue in advance of trial would be premature. Response at 12-13. The government cites to no Second Circuit authority—and Mr. Saenz is aware of none—in support of its conclusory assertion that "Congress intended separate punishments for" VICAR attempted murder and VICAR assault. *See id*; *cf. Barnaby*, 2021 WL 2895648, at *7 (dismissing multiplicitous counts for attempted Hobbs Act robbery and commission of physical violence in furtherance of a plan to commit Hobbs Act robbery because the indictment "charged defendants with committing two alternate means of violating a single criminal prohibition")*.* And it ignores the sound reasoning of the Sixth and Ninth Circuits in *United States v. Woods*, 14 F.4th 544, 559-60 (6th Cir. 2021) and *United States v. Bryant*, 357 F. App'x 945, 948 (9th Cir. 2009), which were cited by Mr. Saenz and which held that Congress did *not* in fact intend separate punishments under the two provisions and that simultaneous convictions under §§ 1959(a)(3) and 1959(a)(5) are multiplicitous. While it is true that the *Bryant* and *Woods* courts reached these holdings after the defendants had been convicted, neither held that multiplicity could only be raised after trial.

The government next claims that those VICAR counts that charge a single act of violence are not multiplicitous with one another because those counts "are legally and factually distinct." Response at 13-14. The government does not explain why this is the case, nor can it. As Mr.

7

Saenz set forth in his motion, Congress intended the VICAR statute's "unit of prosecution" to consist of each "independent act" of violent conduct. *United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015); *United States v. Holt*, 751 F. App'x 820, 827 (6th Cir. 2018); *see also Bryant*, 357 F. App'x at 948. The government makes no effort to distinguish these persuasive opinions.

Additionally, the government takes issue with Mr. Saenz's argument that a series of VICAR counts, all of which charge conspiracies to murder unspecified groups of "rival gang members," are multiplicitous. The fact that the charged VICAR conspiracies reference different (although often overlapping) time periods does not mean that the charges "thereby cover separate and distinct murder conspiracies." *See* Response at 12. Conspiracy charges, as the Second Circuit has recognized, are particularly susceptible to double jeopardy concerns, and courts examining potentially multiplicitous conspiracy counts should examine "whether there existed one or more agreement" to perform illegal acts, considering, *inter alia*, any overlap of personnel and any time overlap. *United States v. Deas*, No. 3:07-cr-73, 2008 WL 5063903, at *2-*3 (D. Conn. Nov. 24, 2008) (citations omitted). Both considerations are present here.

Finally, the government opposes Mr. Saenz's arguments that the VICAR conspiracy counts (Counts Three, Five, Nine, Sixteen, Nineteen, Twenty-Six, Twenty-Eight, Thirty-One, Thirty-Three, and Thirty-Six) are multiplicitous as they relate to Count Two. Response at 14. Although this argument was endorsed by a reported decision from the District of Maryland, the parties are in agreement that it is foreclosed by Second Circuit precedent. Omnibus Motion at 28-29; Response at 14. As Mr. Saenz clearly indicated in his motion, he has raised this argument for preservation purposes. Omnibus Motion at 29.

8

### 2.    VICAR Specificity

The government responds to Mr. Saenz's challenge to the specificity of certain of the VICAR counts in the same way that it responds to the insufficiently specific racketeering acts: by asserting that there can be no problem because it provided some victim names to Mr. Saenz via bill of particulars in response to a court order. Response at 19-20, 24; *see also* Mar. 18, 2024 Minute Entry (Doc. 2508) (ordering disclosure). For the reasons set forth in part II.A, *supra*, the provision of this information by the government is not enough to salvage this insufficiently pled indictment. *See Stringer*, 730 F.3d at 124-25. In any event, Mr. Saenz's arguments about the lack of specificity in the VICAR counts are not "redundant of his arguments challenging the specific of Counts One and Two," *see* Response at 24, because the arguments challenge entirely different counts brought under entirely different statutes.

Moreover, the government makes virtually no effort to address Mr. Saenz's argument that since the Indictment does not adequately plead the existence of a RICO enterprise or Mr. Saenz's position in it, it has not adequately pled the VICAR counts. The existence of a RICO enterprise and a defendant's role in it are essential elements of a VICAR offense. Omnibus Motion at 20-21. Without a cognizable racketeering charge, the twenty-four alleged acts of VICAR conduct are nothing more than "unrelated acts" that cannot be tied together under the "purview of a § 1959 prosecution." *Id.* (quoting *United States v. Saavedra*, 223 F.3d 85, 91 (2d Cir. 2000)).

### 3.    VICAR Constitutionality

#### a.    Vagueness and Commerce-Clause Challenges

The government takes issue with Mr. Saenz's facial and as-applied challenges to the constitutionality of the VICAR statute on the grounds that it is vague and runs afoul of the Commerce Clause. Response at 25-29. As with certain of his multiplicity arguments, Mr. Saenz

made clear in his motion that he raised the constitutional vagueness and Commerce-Clause arguments for preservation purposes. Omnibus Motion at 33-35.

### b.  Eighth Amendment Challenge

Mr. Saenz has challenged the VICAR homicide counts set forth in Counts Four, Six, Twenty, Twenty-Seven, Twenty-Nine, Thirty-Two, Thirty-Four, and Thirty-Seven on the basis that each of those counts carries a mandatory life sentence in violation of *Miller v. Alabama*, 567 U.S. 460 (2012).[3] He raises two points, each of which the government contests. First, Mr. Saenz notes that the VICAR homicide counts against him establish continuing offenses, that he was under the age of eighteen during the commission of those continuing offenses, and that the counts must therefore be dismissed pursuant to *Miller* because they would impose mandatory life sentences for conduct he committed before his eighteenth birthday. Simply sentencing him to a non-life sentence or a discretionary life sentence for a § 1959(a)(1) violation would not resolve the issue because the statute's mandatory life sentencing provision is not severable. Second, Mr. Saenz argues that *Miller* should be extended to include offenders who were in their late teens and early twenties at the time of their offenses.

*Miller* prohibits the imposition of mandatory life-without-parole sentences on individuals who were "under the age of 18 at the time of their crimes." 567 U.S. at 465. The parties agree that under current constitutional jurisprudence, the Eighth Amendment does not require individualized sentences for adults in non-capital cases; the imposition of mandatory life-

---

[3] Because his *Miller* arguments differ substantially from his other arguments in support of dismissal, Mr. Saenz raised those arguments in a stand-alone motion rather than including them in his Omnibus Motion. *Miller* Motion (Doc. 2558). The government addressed Mr. Saenz's *Miller* arguments and his other dismissal arguments (as well as certain dismissal arguments raised by Jairo Saenz) in in its omnibus Response. In the interests of consolidating pleadings wherever possible, Mr. Saenz has elected to reply in support of his *Miller* arguments in this brief.

without-parole sentences on people who were 18 or older at the time of their offenses is permissible under *Miller*. *See* Response at 31. What the parties disagree on, with respect to the first prong of Mr. Saenz's Eighth Amendment argument, is whether Mr. Saenz was "under the age of 18 at the time of" the VICAR homicide crimes. *See* 567 U.S. at 465.

The government does not dispute that the VICAR statute, like the racketeering statute, establishes a continuing offense. *See generally Miller* Motion at 7-9 (citing, *e.g.*, *Saavedra*, 223 F.3d at 91; *United States v. McCall*, 915 F.2d 811, 816 (2d Cir. 1990)). Substantive racketeering—itself a continuing crime—is an essential element of any VICAR violation. *See, e.g.*, *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011). In this case, that essential racketeering element of each charged VICAR homicide offense, as set forth in the Indictment, occurred beginning in January 2008, when Mr. Saenz was a minor.[4] It makes no difference that the crime spanned Mr. Saenz's eighteenth birthday and continued to occur when he was an adult; *Miller* interprets the Eighth Amendment to forbid the imposition of mandatory life sentences on those who were minors "at the time of" their crimes, speaking in language of prohibition (holding that an offender who was under eighteen at the time of his crime *cannot* be subjected to a mandatory sentence of life without parole) rather than language of authorization (permitting mandatory life sentences so long as an offender was an adult at the time of his crime).

In *United States v. Conyers*, the district court considered an Eighth Amendment challenge raised by a defendant, William Bracy, who was under eighteen at the time of the commission of one element of a VICAR homicide (in that case, the killing itself), and held that § 1959(a)(1)'s

---

[4] Mr. Saenz is cognizant that the government has represented it will introduce evidence of his "engagement in racketeering activities beginning in approximately 2014," when he was a young adult, and will "present only evidence of the defendants' criminal conduct committed after the age of 18 at trial." Response at 32. As Mr. Saenz explained in his motion, this representation does not cure the constitutional defect in the Indictment. *Miller* Motion at 11 n.4.

mandatory life sentence was invalid due to Bracy's age. 227 F. Supp. 3d 280 (S.D.N.Y. 2016).

Mr. Saenz, too, was under eighteen at the time of the alleged commission of an element of the

VICAR homicide charges—albeit a different element, although there is no reason that this

distinction should change the result. The government acknowledges the lack of any Second

Circuit authority on this specific issue, noting that "[i]n other cases considered and affirmed by

the Second Circuit, the focus has been on the defendant's age at the time of the murder, not the

defendant's age at the time he first joined the enterprise." Response at 33. This is precisely Mr.

Saenz's point: the Second Circuit decisions relied on by the government are inapposite because

they did not consider the argument Mr. Saenz is raising here, which is that a defendant's juvenile

status at the time of the commission of *any* element of a VICAR homicide invalidates the

statute's mandatory life sentencing provision.

       The government notes that several district courts have worked around this Eighth

Amendment problem by treating the VICAR murder statute's "ordinarily-mandatory minimum

sentence of life imprisonment as discretionary" when applied to offenders who were under

eighteen at the time of their crimes. Response at 30. This Court has also identified one such

example. May 9, 2024 Order (Doc. 2566) at 3-4 (citing *United States v. Garcia*, 666 F. App'x

74, 78 (2d Cir. 2016); *Garcia v. United States*, No. 10 CR 471 (GRB), 2023 WL 4373626

(E.D.N.Y. July 6, 2023)). Mr. Saenz respectfully submits that the fact that courts in the Second

Circuit have sentenced juvenile offenders on VICAR homicide convictions, and that some such

sentences have subsequently been affirmed, does not resolve the issue. As Mr. Saenz explained

in his motion, the court in *Conyers* conducted a detailed analysis of its ability to sever VICAR's

sentencing provision from the rest of the statute in order to be able to impose a discretionary

sentence rather than the mandatory one contemplated by § 1959. *Miller* Motion at 12-13 (citing

*Conyers*, 227 F. Supp. 3d 280). The *Conyers* court ultimately concluded that it could appropriately sever § 1959(a)(1)'s sentencing provision—a holding with which Mr. Saenz respectfully disagrees, and which is inconsistent with the conclusion reached by at least one federal court of appeals. *Miller* Motion at 12-13. In any event, neither *Garcia* nor any of the other cases identified by the government considered the argument that Mr. Saenz is making here: that the VICAR homicide statute is unconstitutional as applied to juvenile offenders (which Mr. Saenz argues that he is) because of its *mandatory* life-sentence provision. Mr. Saenz does not dispute that the type of *discretionary* sentences (including discretionary life sentences) that were imposed in *Garcia*, *Conyers*, and other cases, are permissible under *Miller*. To Mr. Saenz's knowledge, there is *no* authority—other than perhaps *Conyers*, which he addressed and distinguished in his motion—addressing the particular argument raised here.

The government's contention that Mr. Saenz's Eighth Amendment challenge to the Indictment is premature and should be addressed at sentencing misconstrues Mr. Saenz's point about the fundamental constitutional deficiencies inherent in the VICAR statute as applied to people who were under eighteen at the time of their crimes. *See* Response at 34. As Mr. Saenz has explained, it would be appropriate for this Court to conclude—consistent with *United States v. Under Seal*, 819 F.3d 715 (4th Cir. 2016)—that the VICAR statute's sentencing provision is not severable. *Miller* Motion at 12-13. While Mr. Saenz has already acknowledged that such an approach would diverge from the approach endorsed by the district court in *Conyers* (and accepted without any analysis by other district courts), there is no Second Circuit authority precluding it. The government suggests otherwise by mischaracterizing the Second Circuit's *Garcia* decision as "affirming where district court took pro-severability approach." Response at

13

35. In fact, the issue of severability was not, to Mr. Saenz's knowledge or based on the public record, at issue before this Court at the *Garcia* sentencing.

Finally, Mr. Saenz's second argument—that *Miller* should be extended to preclude the imposition of mandatory life sentences on offenders who were in their late teens or early twenties at the time of their offenses—is consistent with the holdings reached by several state supreme courts and is supported by an emerging scientific consensus on the development of the juvenile brain. *Commonwealth v. Mattis*, 224 N.E.3d 410 (Mass. 2024); *People v. Parks*, 987 N.W.2d 161 (Mich. 2022); *Matter of Monschke*, 482 P.3d 276 (Wash. 2021); *see also Miller* Motion, Exh. A. As Mr. Saenz has acknowledged, however, this argument is currently foreclosed by Second Circuit precedent. *United States v. Sierra*, 933 F.3d 95 (2d Cir. 2019). The Second Circuit's *Sierra* holding predated the evolution of community standards reflected in the decisions of the Massachusetts, Michigan, and Washington Supreme Courts, and the scientific understanding of the development of the juvenile brain has evolved in the five years since *Sierra* was decided. Nevertheless, Mr. Saenz has stated that this argument is raised for preservation purposes. *See* May 23, 2024 Motion (Doc. 2574) at 12 n.4.

## C.    The 18 U.S.C. § 924 Counts

### 1.    Section 924(c) Multiplicity

The government misconstrues Mr. Saenz's argument that certain of the 18 U.S.C. § 924(c) and § 924(j) counts are multiplicitous with one another. *See* Omnibus Motion at 38-45. Section 924(c) charges are multiplicitous when they allege firearm usage in furtherance of a single predicate offense. *Id.* at 39 (citing cases); *United States v. Lindsay*, 985 F.2d 666, 677 (2d Cir. 1993). The government contends that each § 924(c) count "charges [Mr. Saenz] with a separate occasion of firearm usage, in furtherance of a separate act of violence, and a separate

predicate offense . . . ." Response at 14. But this characterization is misleading. While some (although not all) of the § 924(c) counts charge Mr. Saenz with using firearms in furtherance of both the substantive racketeering in Count One *and* other predicate offenses, those other predicate offenses are VICAR offenses—acts of violence committed as part of the substantive racketeering activity charged in Count One. (Indeed, those same acts of violence are also charged as racketeering acts supporting Count One.) In this sense, and because VICAR is intended by Congress to be the "violent crime corollary to the RICO statute," *see United States v. Savage*, 970 F.3d 217, 273 (3d Cir. 2020), the VICAR counts are part and parcel with Count One to the extent that they serve as predicates for the § 924(c) charges. In other words, by predicating the § 924(c) counts on various acts of violence committed in furtherance of the racketeering charged in Count One, the government is predicating all of the § 924(c) counts on the Count One racketeering—a violation of the Double Jeopardy Clause.

This was not the scenario presented in any of the cases cited by the government. *See* Response at 15. *United States v. Arline*, as the government readily acknowledges, involved two § 924(c) charges: one predicated on a drug-trafficking conspiracy charged under 21 U.S.C. § 846, and the other predicated on a substantive racketeering charge. 835 F.3d 277, 279 (2d Cir. 2016). Essentially the same is true of *United States v. Salameh*, which involved two § 924(c) counts predicated on two completely distinct crimes: conspiracy to commit various terrorist acts—the bombing of the World Trade Center—in violation of 18 U.S.C. § 844, and assault on a federal agent in violation of 18 U.S.C. § 111. While that latter assault was, as the government points out, factually linked to the bombing, it was distinguishable from—and not an essential element of— the bombing, as is the case with the racketeering and VICAR counts here. 261 F.3d 271, 274-75 (2d Cir. 2001). In *United States v. Mejia*, the VICAR counts that served as the predicates for the

15

relevant § 924(c) charges did not all flow into a single racketeering count (no § 1962 violation was charged), whereas the VICAR counts in this case do. *See* 545 F.3d 179, 184 (2d Cir. 2008). And *United States v. Jenkins*, while arguably the most factually aligned with this case out of any of the opinions cited by the government, is a summary order[5] in which the court, instead of engaging with the defendant's multiplicity argument, rejected it offhand by citing to *Mejia*, which is—as explained above—factually distinct from this case and from *Jenkins*. No. 19-CR-610, 2022 WL 3138879 (2d Cir. Aug. 5, 2022). None of these cases (other than the summary order in *Jenkins*, which is otherwise distinguishable) involved the scenario presented here: multiple § 924(c) counts predicated on a series of VICAR offenses, all of which are, in turn, predicated on a single charge of racketeering.[6]

### 2. Section 924(c) and Crimes of Violence

Mr. Saenz argued in his motion that the § 924(c) counts are further invalidated by the fact that they are predicated on a range of offenses that are not crimes of violence or drug-trafficking crimes as required by the statute. Omnibus Motion at 46-56. These arguments were raised for preservation purposes. *Id.*; *see also* May 23, 2024 Motion at 17. Raising and preserving these arguments is particularly important because of the pace at which crime-of-violence jurisprudence

---

[5] All summary orders in the Second Circuit are non-precedential. 2d Cir. L.R. 32.1.1(a); *see also Garcia v. Alk*, No. 09-CV-2045 DLI LB, 2015 WL 1469294, at *6 (E.D.N.Y. Mar. 30, 2015) (non-precedential opinions issued by the Second Circuit are not binding on the lower district courts in the Second Circuit).

[6] The government also opposes Mr. Saenz's position that the charged violations of 18 U.S.C. § 924(j) are multiplicitous as they relate to corresponding violations of § 924(c). Mr. Saenz has already advised the Court and the government that a recent Second Circuit opinion—issued after Mr. Saenz filed his motion to dismiss, but before the government filed its Response—now forecloses this argument. May 23, 2024 Motion at 17 n.5 (citing *United States v. Barrett*, 102 F.4th 60 (2d Cir. 2024)). In recognition of this new binding precedent, Mr. Saenz here reiterates that he maintains the argument for preservation purposes only. *See id.*

is evolving. Undersigned counsel are aware of the rapid pace at which appellate courts are honing the definition of what does and does not constitute a crime of violence. There is no better illustration of this point than the United States Supreme Court's recent grant of certiorari in *United States v. Delligatti*, which is anticipated to resolve a circuit split over the issue of whether a crime that can be committed by a defendant's inaction—specifically, New York second-degree homicide, which is one of the predicates at issue here—can properly constitute a crime of violence. *United States v. Delligatti*, --- S. Ct. ---, 2024 WL 2805741 (U.S.S.C. June 3, 2024). In light of the Supreme Court's recognition of this circuit split, the government's characterization of Mr. Saenz's arguments as "frivolous" is particularly unmerited. Response at 37. Mr. Saenz should not be faulted for asserting arguments in order to validly preserve his appellate rights.

### 3.      Section 924(c) Specificity

Mr. Saenz pointed out in his motion that certain of the § 924(c) counts—specifically, Counts Eighteen and Forty-Two—are insufficiently specific for the same reason that certain of the racketeering acts and VICAR charges are insufficiently specific: they charge the use of firearms during and in relation to conduct that is insufficiently specific, leaving Mr. Saenz unable to confirm that the facts presented to the jury at trial will be the same facts that were presented to the grand jury. Omnibus Motion at 45. In its Response, the government does not dispute this.

### D.      The 18 U.S.C. § 3 Count

Finally, the government opposes Mr. Saenz's challenge to Count Thirty, which charges him as an accessory after the fact to the VICAR homicides and VICAR conspiracies charged in Counts Twenty-Six through Twenty-Nine. The government first faults "the defendant" for "conced[ing]" that "accessory-after-the-fact offense 'is distinct' from conspiracy and principal liability"—a mischaracterization of a point made by codefendant Jairo Saenz (but not by Alexi

Saenz). Response at 11. It is true that the offenses are distinct in that they must be completed by different people; one person cannot be both a principal *and* an accessory-after-the-fact to the same crime. *See, e.g.*, *Skelley v.* United States, 76 F.2d 483, 485 (10th Cir. 1935). In this sense, the two offenses (principal to VICAR conspiracy and VICAR homicide, on one hand, and accessory-after-the-fact to the same offenses, on the other) are mutually exclusive and are fundamentally inconsistent with one another, rendering the Indictment defective. *See United States v. Conde*, 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003). The government does not dispute this. Instead, it cites a half-century-old Third Circuit decision, *Government of the Virgin Islands v. Aquino*, 378 F.2d 540, 553-54 (3d Cir. 1967), which it claims "supports retaining Count Thirty in the indictment at this stage of the case" because it holds that where a defendant is indicted as a principal, the jury may not be instructed that it can find the defendant guilty as an accessory after the fact. Response at 12 n.3. But in *Aquino*, the defendant was charged via information as a principal *only*; it was not until trial that the issue of his potential role as an accessory after the fact arose. *See* 378 F.2d at 418. *Aquino* did not address whether an indictment charging a single individual as both a principal and as an accessory is defective; it could not have, because those circumstances were not present in *Aquino*. *See generally id.* Thus, *Aquino* has no bearing on the deficiency in the Indictment that is at issue here.

III.   **CONCLUSION**

For the foregoing reasons, as well as those set forth in his Omnibus Motion to Dismiss (Doc. 2548) and his Motion to Dismiss Counts Four, Six, Twenty, Twenty-Seven, Twenty-Nine, Thirty-Two, Thirty-Four, and Thirty-Seven (Doc. 2558), Mr. Saenz respectfully requests that this Court issue an order dismissing with prejudice Counts One through Six, Nine through Twenty-

18

Two, Twenty-Six through Thirty-Four, and Thirty-Six through Forty-Two of the Eighth

Superseding Indictment (Doc. 2270).

Respectfully submitted,

*/s/ Anna K. Christensen*
NATALI TODD
VICTOR J. ABREU
PETER K. WILLIAMS
ANNA K. CHRISTENSEN

*Counsel for Alexi Saenz*

July 8, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Anna Christensen, hereby certify that on this date I caused the foregoing to be served on the parties of record through the Court's electronic filing system.

<u>/s/ Anna K. Christensen</u>
Anna K. Christensen

Dated: July 8, 2024